Joseph A. Friedman
State Bar No. 07468280
**KANE RUSSELL COLEMAN & LOGAN PC**
3700 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201
Telephone - (214) 777-4200
Facsimile -  (214) 777-4299
Email: ecf@krcl.com


J. Michael Vaughan (admitted *pro hac vice*)
David M. Skeens (admitted *pro hac vice*)
R. Keith Johnston (admitted *pro hac vice*)
**WALTERS BENDER STROHBEHN & VAUGHAN PC**
11100 Main Street, Suite 2500 City Aviva Square
Kansas City, Missouri 64105
Telephone: (816) 421-6620
Facsimile:  (816) 421-4747
Email: mvaughan@wbsvlaw.com
Email:  dskeens@wbsvlaw.com
Email:  kjohnston@wbsvlaw.com


Counsel for Aviva Life and Annuity Company

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE** | § | **CHAPTER 11** |
| | § | |
| **MILLENNIUM MULTIPLE EMPLOYER** | § | **CASE NO. 10-13528** |
| **WELFARE BENEFIT PLAN,** | § | |
| | § | **(PENDING IN THE UNITED STATES** |
| **DEBTOR.** | § | **BANKRUPTCY COURT FOR  THE** |
| | § | **WESTERN DISTRICT OF** |
| | § | **OKLAHOMA)** |
| | § | |
| | § | |
| **CLAUDE YOUNG, ET AL.** | § | **ADVERSARY PROCEEDING** |
| | § | **NO. 10-03156** |
| **PLAINTIFFS,** | § | |
| **VS.** | § | |
| | § | |
| **MILLENNIUM MULTIPLE EMPLOYER** | § | |
| **WELFARE BENEFIT PLAN, ET AL.** | § | **Hearing:  August 16, 2010** |
| | § | **Time:      9:15 a.m.** |
| **DEFENDANTS.** | § | |
| | § | |

## AVIVA LIFE AND ANNUITY COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTIONS TO REMAND AND/OR ABSTAIN

### [RELATES TO DOCKET NOS. 35, 36, 48, 49, 50 AND 118]

Aviva Life and Annuity Company ("Aviva") files this Response in Opposition to Plaintiffs'

Motions to Remand and/or to Abstain, which requests appear in Plaintiffs' Motion to Clarify

Scope of Removal and/or to Remand and/or to Abstain, and Response to Millennium's Motion to

Transfer Venue [Dkt. Nos. 36, 49 and 50]; (B) Motion to Clarify Scope of Removal,

Alternatively, Motion to Remand, Motion to Abstain and Response to Motion to Transfer Venue

Filed by Cottam and Warder [Dkt, Nos. 35 and 48] and (C) Motion for Remand; Alternatively,

Motion to Abstain, filed by Defendants Archer Bonnema, Jacob Bonnema, Joshua Financial

Corporation [Dkt. No. 118].  In support of its opposition, Aviva states as follows: [1]

### I.
### JURISDICTION

1.      This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334

and 1452.  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1452.

### II.
### PROCEDURAL HISTORY

2.      On June 9, 2010 (the "Petition Date"), the Millennium Employer Welfare Benefit

Plan (the "Debtor" or "Millennium Plan") filed a voluntary petition for relief under Chapter 11 of

---

[1]This Response is provided without prejudice to Aviva's Response in Support of Debtor/Defendant Millennium Multiple Employer Welfare Benefit Plan's Motion to Transfer Venue of Removed Case to Court Administering the Debtor's Chapter 11 Bankruptcy Case. [Dkt. No. 88]  As such transfer briefing establishes, the proper course where both transfer and remand are at issue is to first decide the transfer issue and if transferred, then the transferee court can decide remand. *In re Baker Hughes Oilfield Operations Inc v. Liberty Energy, L.C.C.*, 2010 WL 1727930 at *3 (Bankr. E.D.Okla., 2010) (citing *City of Liberal, Kansas v. Trailmobile Corp.*, 316 B.R. 358, 363 (D.Kan., 2004); *accord Hohl v. Bastian*, 279 B.R. 165, 177 (W.D.Pa. 2002); *In re Allegheny Health, Education and Research Foundation*, Case No. 98025773, 1999 WL 1033566, at *1 (Bankr. E.D.Pa., Nov. 10, 1999); *In re Gross Metal Products*, 1997 WL 778756, at *1 (Bankr. E.D.Pa., Dec. 16, 1997); *In re Convent Guardian Corp.*, 75 B.R. 346, 347 (Bankr. E.D.Pa., 1987); *Colarusso v. Burger King Corp.*, 35 B.R. 365, 366-68 (Bankr. E.D.Pa. 1984); *Stamm v. Rapco Foam, Inc.*, 21 B.R. 715, 723-25 (Bankr. W.D.Pa. 1982).

Title 11 of the United States Bankruptcy Code commencing Bankruptcy Case No. 10-5328 (the

"Bankruptcy Case") in the United States Bankruptcy Court for the Western District of Oklahoma

(the "Bankruptcy Court").  The Bankruptcy Case is pending before the Honorable T.M. Weaver.

3.    The Debtor also filed on the Petition Date a *Notice of Removal*[2] in this Court

initiating the above captioned adversary proceeding and effectuating the removal of a lawsuit

pending in District Court of the 95th Judicial District, Dallas County, Texas, Cause No. 08-13325,

styled *Claude Young, et al. v. The Millennium Employer Welfare Plan, et al.* (herein, the

"Lawsuit").  *See* Plaintiffs' Ninth Amended Petition, Appendix ("App.") pgs. Aviva 00001-251.

The Lawsuit is a "mass action" involving some 65 plaintiffs from 13 states and 29 defendants.

Aviva is a defendant and cross-claimant in the Lawsuit.  The Debtor is defendant,  cross-claim

defendant and counterclaim plaintiff in the Lawsuit.

4.    Plaintiffs and certain defendants in the Lawsuit have filed motions requesting that

this Court remand and/or abstain with respect to the Lawsuit (Dkt. Nos.  35, 36, 48 49 50, and

118) (collectively, the "Motions").  The Motions are presently set for hearing on August 16,

2010.  As detailed below, the motions to remand and/or abstain should be denied.

## III.
## FACTUAL BACKGROUND

5.    The Millennium Plan was formed effective November 1, 2002, as an Employer

Welfare Benefit Plan.  On or about February 20, 2003, Republic Bank & Trust became the trustee

("Trustee") of a trust ("Trust") created to hold, in trust, the Plan Assets of the Millennium Plan,

including the "Contributions" to the Trust and the policies of life insurance originally issued by a

---

[2]The Debtor subsequently filed an *Amended Notice of Removal* on June 24, 2010, to make clear that it was removing the entirety of the Lawsuit, including all claims filed by the plaintiffs against the Debtor and other defendants, and all counter claims and cross-claims filed by any of the parties in the Lawsuit.

number of insurers, including Indianapolis Life, one of Aviva's predecessor entities.  Republic

Bank is located in the Western District of Oklahoma judicial district and it is within that district

that it holds the policies of life insurance on the lives of the individual participants in the

Millennium Plan.[3]

6.      The Millennium Plan was established or was intended to be established according

to a "Master Plan" adopted effective November 1, 2002, and as amended effective March 1, 2003,

and as further amended effective January 1, 2005, as a "10 or more employer plan within the

meaning of Section 419A(f)(6) of the Internal Revenue Code of 1986, as amended."  Participation

in the Millennium Plan was funded through the purchase of life insurance policies from a variety

of insurance companies.  Individual employees of participating employers are the insureds under

those policies.  The noted life insurance policies are the primary (if not sole) asset of the Debtor.

*See* Debtor's Schedule B at App. Pgs. 00268-322.

7.      Certain of the participants in the Millennium Plan contended that the Millennium

Plan is not a "10 or more employer plan within the meaning of Section 419A(f)(6) of the Internal

Revenue Code of 1986, as amended."  That is, these certain plan participants, many of whom are

plaintiffs in the Lawsuit or other similar lawsuits (*Passons, White* and *Khetpal*), assert that their

participation in the Millennium Plan was the result of a mistake of fact or facts and/or was

procured by fraudulent or negligent misrepresentations such that their participation is void or may

be voided and their contributions to the Plan (which paid the insurance premiums) should be

rescinded or returned to such participants.

---

[3]The trust agreement creating the Trust holding the assets of the Millennium Plan (the life insurance policies) is attached as Exhibit A1 to the American General's Memorandum in Support of the Debtor's Motion to Transfer. [Dkt. No. 85].

8.      Specifically as to the Lawsuit, plaintiffs are certain employees and employers that are Millennium Plan participants and they assert claims of fraud, negligent misrepresentation, fraudulent inducement, constructive trust, civil conspiracy, Texas statutory claims, breach of fiduciary duty and equitable relief. The plaintiffs in the Lawsuit allege that the Debtor and Aviva, as well as other defendants, all engaged in a conspiracy to induce plaintiffs to participate in what they contend is a fraudulent tax shelter, thereby causing plaintiffs millions of dollars in damages. *See e.g.* Ninth Amended Petition, App. pgs 00112-113.   In connection with such conspiracy, fraud and other claims, the plaintiffs have and continue to claim beneficial ownership of the life insurance policies (which, again, are the primary asset of the Debtor) and seek, among other things, to have all contributions to the Debtor/premium payments for such policies returned to them.

a.      For example, in their Ninth Amended Petition, among other claims, the plaintiffs ask for the imposition of a constructive trust over the "funds" which are "clearly traceable to particular funds" which arose from the plaintiffs' "payments" and an order barring any disbursement or dissipation of such funds. *See* Ninth Amended Petition,  App. pg. 00112.    The only traceable monies or funds held by anyone resulting from the payments are the cash values accumulated in the life insurance policies held by Republic Bank & Trust as trustee for the Debtor.

b.      Additionally, in the Bankruptcy Case, these same plaintiffs reaffirm that they assert a claim to and beneficial interest in the Debtor's assets (i.e. the insurance policies).  *See* Motion for Appointment of Trustee, ¶ 11, App. pg. 00325.

9.      Quite simply, what plaintiffs seek as a remedy for their fraud and conspiracy claims against Aviva, the co-defendants and the Debtor is to wrest control from the Debtor of the

policies of insurance purchased through their contributions to the Debtor – to obtain the assets of the Debtor. While plaintiffs assert as part of their request for remand and abstention that they can sever the claims against Aviva and other co-defendants and have them heard in state court, this prospect is belied by their state court petition and in their remand/abstention motion. In such pleadings they expressly state that they have sued the insurance companies for fraud and the Millennium Plan, which they describe as nothing but a collection of those policies, so that they can recover from the debtor "their money." *See* Plaintiffs Motion to Clarify Scope of Removal and/or to Remand and/or Abstain, and Response to Millennium's Motion to Transfer Venue, and Brief in Support at ¶ 11, pg. 9. [Dkt. 36].

10.    The Debtor, on the other hand, contrary to the assertions of certain of the plan participants, has always and continues to assert that it has ownership and control of the subject insurance policies. Part of that assertion of ownership is the efforts by Republic Bank, as trustee for the Debtor, to assert policy ownership rights by over the life insurance policies including the right to borrow against such policies. For example, in August of 2009, Republic Bank submitted a loan request to Aviva, seeking to borrow $1,505,000 from Aviva and identifying the corresponding policies of insurance issued by Aviva against which this loan request was made.

11.    Aviva has asserted cross-claims in the Lawsuit against the Debtor and Republic Bank, its trustee, for declaratory relief, contribution and indemnity. *See* Aviva's Cross-Claim Against The Millennium Multiple Employer Welfare Benefit Plan and Republic Bank & Trust, App. pgs 00252-267. The Debtor has also asserted counterclaims against all plaintiffs in the Lawsuit.

12.    The disputes concerning the Millennium Plan also led to the filing of a number of other lawsuits involving the Debtor, and in some cases Aviva, that are pending in, among other

places, this Court, Tennessee and Oklahoma (collectively, the "Other Litigation").[4]  In two of

those cases, *Passons et al., v. Aviva Life et al.*, and *Khetpal et al. v. Aviva Life, et al.*, which

involve almost identical claims by participants in the Millennium Plan as those asserted in the

Lawsuit, Aviva sought leave to file like cross-claims against the Debtor and Republic Bank, which

motions were pending on the Petition Date.

13.    The Debtor also removed to federal court all those actions that were pending in

state court, and seeks transfer of all such removed matters as well as those matters that were

already in federal court (*Khetpal*), to the Bankruptcy Court.

14.    In addition, Aviva filed prior to the Petition Date two federal interpleader actions

in the Western District of Oklahoma styled *Aviva Life and Annuity Company (f/k/a Indianapolis*

*Life Insurance Company) v. Republic Bank & Trust, et al.*, Case No. Civ.-09-1113-F ("RBT-

I")and *Aviva Life and Annuity Company v. Republic Bank & Trust, et al.* Case No. 09-cv-01235-

F  ("RBT-II" and with RBT-I the "Interpleaders"). *See* RBT I Complaint, App. pgs. 00333-348;

RBT II First Amended Complaint, App. pgs. 00380-396. The Interpleaders were filed under 28

U.S.C. § 1335 (statutory interpleader) and Fed.R.Civ.P. 22 (Rule interpleader) to address the

exposure of Aviva to the potential of dual liability in connection with the competing claims of

---

[4]Although Aviva is not a party to each lawsuit, the Other Litigation includes at least the following actions: *Connie Stauffer-Embras, et al. v. Millennium Multiple Employer Welfare Benefit Plan, et al.*, Case No. 10-03157, U.S. Bankruptcy Court, Northern District of Texas, Dallas Division; *Fred Westfall v. Millennium Multiple Employer Welfare Benefit Plan, et al.*, Case No. 10-03158, U.S. Bankruptcy Court, Northern District of Texas, Dallas Division; *Passons, et al., v. Aviva Life and Annuity Company, et al.*, Case No. 10-cv-00575, U.S. District Court, Middle District of Tennessee; *Millennium Multiple Employer Welfare Benefit Plan v. Jerald White, et al.*, Case No. 10-cv-01147, U.S. District Court, Western District of Tennessee; *Millennium Multiple Employer Welfare Benefit Plan v. the Penn Mutual Life Insurance Company*, Case No. 10-cv-00083-F, U.S. District Court, Western District of Oklahoma; and *Vivek Khetpal, et al. v. Aviva Life and Annuity Company, et al.*, Case No. 10-cv-00088, U.S. District Court, Eastern District of Oklahoma.  The Lawsuit (i.e. the *Young* matter) and the  *Westfall, Connie Stauffer-Embras, Passons* and *White* matters were removed to federal court on the basis of the Millennium Plan bankruptcy.  The *Khetpal* matter had originated in Oklahoma state court but had been to removed to federal court prior to the Millennium Plan bankruptcy, but which bankruptcy has now been asserted as a supplemental basis for the removal of that action.

certain Millennium Plan participants verses the ownership claims of the Millennium Plan as to millions of dollars of life insurance policies issued by Aviva.

15.    In each of the Interpleaders, the original interpleader defendants consisted of Republic Bank, as trustee of the Millennium Plan, and a number of persons who were insureds under life insurance policies issued by Aviva and participants in the Millennium Plan (this latter category of interpleader defendants is referenced as the "Insured Defendants").    In the Interpleaders, Republic Bank added the Debtor as a third-party defendant.    In the first filed interpleader, case number 09-1113-F, the Debtor filed a counterclaim against Aviva, and in the second interpleader, case number 09-1235-F, Republic Bank filed a counterclaim against Aviva.

16.    As it relates to this adversary proceeding, Plaintiffs Dr. Randolph R. Evans, Randolph R. Evans, M.D., P.C., Dr. Mark E. Wilson, Mark Wilson, DDS, P.C., Dr. Michael McGinnis, Dr. Scott Robertson, Thomas Calabrese and Randolph Wischnewsky are interpleader defendants in RBTI.

17.    Although it was the second filed interpleader, the viability of case number 09-1235-F was first heard and determined by Judge Stephen Friot of the Western District of Oklahoma.    One of the Insured Defendants in that action (the Whites), had filed a state court action in Tennessee against, among others, Aviva and the Debtor and they had obtained an injunction from that state court against Aviva and the Debtor in regard to the making of any policy loans.    The Whites and others challenged the subject matter jurisdiction of that court under 28 U.S.C. § 1335 and also asked the court, even if it determined it had jurisdiction, to abstain from hearing the matter.    Judge Friot rejected those arguments, finding that the court had jurisdiction under § 1335, and determining that it would not abstain, and that it would under § 2361 restrain the *White* matter in Tennessee state court from proceeding as to Aviva, the Debtor

and Republic Bank (the only defendants from the *White* matter that were also parties in RBT-II. *See* Order of February 8, 2010, App pgs 00409-410. Challenges to the court's subject matter jurisdiction in RBT-I (which includes plaintiffs in this adversary) as well as abstention arguments are fully briefed and argued and a ruling on the same was pending on the Petition Date.

18.     Notably, 28 U.S.C. § 2361, which concerns the process and procedures relating to federal interpleader actions, empowers the interpleader court to enter an order restraining the interpleader claimants "from instituting or prosecuting any proceeding in any State or United States court affecting the property, instrument or obligation involved in the interpleader action." Pursuant to that power, as interpleader plaintiff, Aviva seeks to restrain the Lawsuit from proceeding and require that the plaintiffs in the Lawsuit and the Debtor, in order to resolve the potential of the imposition of a dual liability on Aviva, present to the interpleader court their conflicting claims relating to the  ownership and control of the life insurance policies issued by Aviva.

19.     In addition to the noted Interpleaders filed by Aviva, another co-defendant in the Lawsuit and defendant in the Other Litigation, American General American General Life Insurance Company and United States Life Insurance Company in the City of New York (the "American General Parties"), also filed an interpleader action in the United States District Court for the Western District of Oklahoma.  That matter is styled *American General Life Insurance Co., et al. v. Republic Bank & Trust et al.*, Case No. 5:09-cv-01243-F.  The American General Parties, as interpleader plaintiffs, seek essentially the same relief as Aviva as to certain policies of life insurance they issued and under which the claims and positions of certain plan participants (plaintiffs in other actions) and the ownership rights of Republic Bank expose them to the

potential of dual liability.  In that case, Republic Bank filed a counterclaim against all plaintiffs and a third-party complaint against the Debtor.

20.    Finally, while Aviva is not in this action, there is yet another action related to the Debtor and its assets that was filed in the Western District of Oklahoma.  *Millennium Multiple Employer Welfare Benefit Plan et al. v. Penn Mutual Life Insurance Company*, 5:10-cv-00083-F involves claims by the Debtor and Republic Bank against Penn Mutual Life Insurance Company and certain of the plaintiffs/plan participants from the *Westfall* case. In that matter, Penn Mutual has filed third-party claims and counterclaims seeking  interpleader relief.

## IV.
## SUMMARY OF ARGUMENT

21.    The fundamental issue in the Lawsuit, as well as the Other Litigation and the Interpleaders, is the determination of who shall possess and control the life insurance policies that are the subject of all the noted  litigation.  That is, the Lawsuit (and the Other Litigation and Interpleaders) necessarily rest on a determination of what constitutes property of the estate, a question to be answered by the adjudication of the plaintiffs' claims against the Debtor, the non-debtors, including Aviva, the Debtor's counterclaims against the plaintiffs and the cross claims of certain non-debtor defendants, including the cross-claims of Aviva.

22.    In such a context, it is clear that the requests for remand and/or abstention must be denied.  This Court has jurisdiction over the Lawsuit under 28 U.S.C. 1334(b).  Mandatory abstention is not applicable because the Lawsuit constitutes  a core proceeding, and the plaintiffs cannot meet their burden to establish that the Lawsuit can be timely adjudicated in state court. Consideration of the relevant factors likewise dictates that discretionary abstention under 28 U.S.C. § 1334(c)(1) and equitable remand under 28 U.S.C. § 1452(b) are not appropriate.

**V.**

## THIS COURT HAS SUBJECT MATTER JURISDICTION OVER
## THE LAWSUIT PURSUANT TO 28 U.S.C. § 1334(B)

23.    The plaintiffs first seek remand of the Lawsuit on jurisdictional grounds, alleging

that this Court does not have subject matter jurisdiction.  They are wrong.  This Court clearly has

subject matter jurisdiction over the Lawsuit pursuant to 28 U.S.C. 1334(b).

24.    Section 1334(b) provides that district courts have original but not exclusive

jurisdiction of all civil proceedings "arising under" title 11, or "arising in" or "related to" cases

under title 11.  28 U.S.C. § 1334(b).

25.    For purposes of determining whether a particular matter falls within bankruptcy

jurisdiction, it is not necessary to distinguish between matters "arising under" title 11, or "arising

in" or "related to" a case under title 11.  *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987).  The "arising

under," "arising in," and "related to" provisions in Section 1334(b) operate conjunctively to define

the scope of bankruptcy jurisdiction.  *Id.*  Consequently, it is only necessary for purposes of

establishing bankruptcy jurisdiction to determine whether a matter is at least "related to" the

bankruptcy.  *Id.*; *U.S. Brass Corp.*, 301 F.3d 296, 304 (5th Cir. 2002); *In re Canion,* 196 F.3d 579

584 (5th Cir 1999).

26.    A proceeding is "related to" a bankruptcy if "the outcome of that proceeding could

*conceivably* have any effect on the estate being administered in bankruptcy."  *In re Lorax*, 295

B.R. 83, (N.D. Tex. 2003) (emphasis in original) (citation omitted); *In re Case*, 937 F.2d 1014,

1020 (5th Cir. 1991); *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987).  Further, "an action is related

to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of

action (either positively or negatively) and … in any way impacts upon the handling and

administration of the bankrupt estate."  *Feld v. Zale Corp.*  (*In re Zale Corp.*) 62 F.3d 746, 752

(5th Cir. 1995) (internal citations omitted).  Proceedings "related to" bankruptcy "include...suits between third parties which have an effect on the bankruptcy estate." *Celotex*, 514 U.S. at 308 n. 5.

27.     In *Wood*, for instance, the Fifth Circuit Court of Appeals considered whether a lawsuit was related to a bankruptcy case.  The plaintiffs in that case sought to recover stock and monies that the debtors allegedly appropriated from a clinic, and also sought to resolve disputed allocation of interests in the clinic.  The Fifth Circuit determined that such claims were related to the bankruptcy case reasoning that "to the extent that the debtors' interest in the clinic, their stock holdings, or their withdrawals are now property of the estate, the complaint against them has a potential effect on the estate." *Wood*, 825 F.2d at 93-94.

28.     Further, the plaintiffs in *Wood* sought to impose liability against the defendants based on their joint conduct.  The Fifth Circuit also determined that such claims were related to the bankruptcy case because "success against any of the defendants will have a potential effect on the estate," *id.* at 94, reasoning that:

> We find support in the Court of Appeals for the Sixth Circuit and lower courts, which have held that when the plaintiff alleges liability resulting from the joint conduct of the debtor and non-debtor defendants, bankruptcy jurisdiction exists over all claims under section 1334.

*Id.* (citing In re *Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir. 1986); In re *Zamost*, 7 B.R. 859 (Bankr. S.D. Cal. 1980).

29.     Additionally, related to jurisdiction  exists over claims against non-debtors where, like here, non-debtor defendants have potential claims for contribution and indemnity against the debtor based on the outcome of that litigation.  *See e.g., In re Dow Corning Corp.*, 86 F.3d 482, 490-494 (6th Cir. 1996) (finding "related to" jurisdiction under 28 U.S.C. § 1334(b) over plaintiffs'

claims against non-debtors because the "potential for [the debtor's] being held liable to the non-debtors in claims for contribution and indemnification, or vice versa, suffices to establish a conceivable impact on the estate in bankruptcy"); *In re WorldCom, Inc. Securities Litigation*, 293 B.R. 308, 321, 323 (S.D.N.Y. 2003) ("Because the effect of contribution claims on the bankruptcy estate is at the very least 'conceivable' the [plaintiffs'] action is related to the bankruptcy and subject to the jurisdiction of this Court . . . . The potential alteration of the liabilities of the estate and change in the amount available for distribution to other creditors is sufficient to find that litigation among non-debtors is 'related to' the bankruptcy proceeding.").

30.    In this case, the Lawsuit is clearly related to the Bankruptcy Case.  The Lawsuit involves a dispute over ownership of life insurance policies.  The plaintiffs assert that they are the beneficial owners of the life insurance policies issued by Aviva that are the subject of the legal dispute in the Lawsuit.  *See* Ninth Amended Petition, App.  pg. 00112; Plaintiffs' Motion to Appoint Trustee ¶ 11, App. pg. 00325. The Debtor likewise asserts that it is the beneficial owner of such policies.  *See* Debtor's Schedule B, App. pgs. 00269-00322.  Resolution of that dispute will certainly involve interpretation of relevant provisions of the Bankruptcy Code such as whether the policies are "property of the estate" under Section 541 of the Bankruptcy Code. Resolution of that dispute will implicate matters concerning the administration of the estate and proceedings affecting the liquidation of the assets of the estate and the adjustment of the debtor-creditor relationship.  *See*  28 U.S.C. §§ 157(b)(2)(A) and (O).  And the adjudication of such matters will certainly have a conceivable effect on the estate being administered in bankruptcy.

31.    Further, Aviva has asserted claims in the Lawsuit against the Debtor for contribution and indemnity relating to the plaintiffs' claims.  Without a doubt, such contribution claims could "conceivably" have an effect on the Debtor's estate by, among other things, altering

the rights or liabilities of the estate and changing the amount available for distribution to other

creditors. *See In re Dow Corning*, 86 F.3d at 490-494; *In re WorldCom*, 293 B.R. at 321, 323.

32.     For all the noted reasons, this Court clearly has subject matter jurisdiction over the

Lawsuit pursuant to 28 U.S.C. § 1334(b) and plaintiffs' request for remand on jurisdictional

grounds must be denied.

# VI.
# MANDATORY ABSTENTION IS NOT APPLICABLE

33.     The plaintiffs also argue that this Court must abstain based on the  doctrine of

mandatory abstention under 28 U.S.C. § 1334(c)(2).  Plaintiffs are mistaken.

34.     Under 28 U.S.C. § 1334(c)(2), the Court must abstain from hearing the Lawsuit

only if the following six requirements are satisfied:

(1)     A party to the proceeding filed a timely motion to abstain;
(2)     The proceeding is based on a state law claim;
(3)     There is no basis for federal court jurisdiction other than section 1334;
(4)     The proceeding is a "non-core" proceeding;
(5)     An action is commenced in state court; and
(6)     The state court action can be timely adjudicated.

28 U.S.C. § 1334(c)(2).[5]  The § 1334(c)(2) list is conjunctive and the party requesting mandatory

abstention must prove the existence of each element by a preponderance of evidence before

mandatory abstention can be applied.  *Brizzolara v. Fisher Pen Co.*, 158 B.R. 761, 769 (Bankr.

N.D. Ill. 1993); *In re WorldCom,* 293 B.R. at 331 (A party is not entitled to mandatory abstention

if it fails to prove any one of the statutory requirements).

## A.     The Lawsuit Constitutes a "Core" Proceeding

---

[5]Section 1334(c)(2) states in relevant part, that "[u]pon timely motion of a party in a proceeding based upon a State
law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a
case under title 11, with respect to which an action could not have been commenced in a court of the United States
absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is
commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction."

35.     A "core" proceeding is a proceeding that arises under title 11 or that arises in a case under title 11.  *Wood*, 825 F.2d at 96; *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F.Supp. 2d 596, 606 (S.D. Tex. 1999); *see also* 28 U.S.C. § 157(a). Proceedings that "arise under" title 11 are proceedings that involve a cause of action created or determined by a statutory provision of title 11.  *Wood*, 825 F.2d at 96.  The meaning of an "arising in" proceeding is less clear, but seems to be a reference to those administrative matters that arise only in bankruptcy cases.  *Id.* at 97.  In other words, a proceeding "arises in" a case under title 11 if it would have no existence outside of bankruptcy.  *Id.*  A nonexclusive list of examples of core proceedings is contained in 28 U.S.C. § 157(b)(2).  *Id.* at 95.

36.     The Fifth Circuit in *Wood* held that a proceeding is core under Section 157 if it invokes a substantive right provide by title 11 or it is a s proceeding that by its nature could arise only in the context of a bankruptcy case.  *Id.* at 97.    Further, it instructed that in determining the nature of a proceeding for purposes of determining core status, the court must look to both the form and substance of the proceeding.  *Id.*  To that end, whether a proof of claim has been filed is an important factor.  *Id.*  Here, although no bar date has been set but Aviva is in the process and will soon file its proof of claim in the Bankruptcy Case.

37.     That a controversy raises issues of state law is not dispositive on the issue of what is a core proceeding.  28 U.S.C. § 157(b)(3); *In re Case,* 937 F.3d 1014, 1020 (5th Cir. 1991). The relevant inquiry is whether the nature of the controversy rather than the state or federal basis of the claim falls within the core of bankruptcy power.  *Id.*  In *Case*, for instance, the Fifth Circuit determined that a dispute involving a promissory note signed by the debtor clearly affected the distribution of the debtor's assets and was appropriately a core proceeding.  *Id.*  The court

reasoned in part that the dispute at issue in that case "cannot be severed from the remainder of the
bankruptcy court proceedings." *Id.*

38.    Notably, in *In re Perfomance Interconnect Corp.,* 2007 WL 2088281 (Bankr.
N.D. Tex. 2007), a state court fraudulent transfer lawsuit removed to bankruptcy court was
considered by this Court to be a core proceeding since it involved attempts to avoid and recover
alleged fraudulent transfers of the debtor's assets, and the outcome will affect both the
administration if the estate and the liquidation of the estate's major, if not only, asset. *Id.* at 5.

39.    As the record establishes, the Debtor's assets are the life insurance policies and
their bankruptcy must necessarily be based on the use or distribution of the proceeds of such
insurance policies for the creditors of the estate -- namely the plan participants. Likewise, the
claims of plaintiffs are intended to provide them the remedy of gaining control over certain of
those same Debtor assets.    Accordingly, "[i]t must be presumed that that any proceeding
pertaining to the property of the estate is a core proceeding." *Matter of Celotex Corp.*, 152 B.R.
667, 673 (Bankr. M.D. Fla., 1993) (footnote omitted).    As the *Celotex* court explains, when
litigation claims concern the principal assets (sole assets in this case) of the debtor, such claims
are core matters:

> There is here the very real prospect of multiple competing claims
> against a single res, not only from these multiple plaintiffs in these
> nineteen separate lawsuits but also from plaintiffs in other covered
> incidents.    These claims should be adjudicated in a single forum to
> maximize ratable distributions and to minimize the cost of litigation.
> This court is the more appropriate forum to handle competing
> claims over property of a bankruptcy estate, over which this court
> has exclusive jurisdiction. Because the adversary proceeding against
> potential claimants/Defendants involves property of the estate
> which is an integral part of the Debtor's reorganization process and
> is clearly within the context of core matters set forth in 28 U.S.C. §
> 157(b), this adversary proceeding is a core proceeding.

*Id.,* at 677 (internal citations and quotations omitted).

40.    In this case, the Lawsuit constitutes a "core" proceeding.  The Lawsuit is core because the plaintiffs' claims against the Debtor and Aviva are claims to the property the Debtor asserts is property of the estate.  The plaintiffs  clearly dispute whether at least certain of the insurance policies are property of the estate, therefore at a minimum, this issue is part of the "core" jurisdiction of the bankruptcy court to determine whether the Plaintiffs' are claiming to property of the estate pursuant to 11 U.S.C. § 541.  *See Magnes v. Atlas (In re Duval County Ranch Co.)*, 167 B.R. 848, 849 (Bankr. S.D. Tex. 1994); *In re Molina y Vedia*, 150 B.R. 393, 394 (Bankr. S.D. Tex. 1992); ("[t]he determination of what constitutes property of the estate is a core proceeding over which the bankruptcy court has exclusive jurisdiction.").  The dispute will be also be determined by a statutory provisions of title 11 – Bankruptcy Code section 541.  Thus, because the Lawsuit is a core proceeding, mandatory abstention under 28 U.S.C. §1334(c)(2) does not apply.

**B.    The Plaintiffs also Cannot Meet Their Burden that the Lawsuit can be Timely Adjudicated in State Court**

41.    As with the other elements of mandatory abstention, "the party seeking abstention bears the burden of establishing the element of timely adjudication in the context of remand."  *In re Lorax*, 295 B.R. 83, 93 (Bankr. N.D. Tex. 2003).  "[T]he issue is one of judicial discretion." *Georgou v. Fritzshall*, 157 B.R. 847, 851 (N.D. Ill. 1993).  Courts generally focus on the status and needs of the bankruptcy case rather than any particular time guideline.  1 COLLIER ON BANKRUPTCY ¶ 3.05[2] (15th ed. 1998).

42.    The "timely adjudication" factor may not be satisfied if the dispute is intertwined with a pending bankruptcy proceeding, and particularly so where the now removed state court proceeding is quite complex. *See, e.g.*, *Bondi v. Grant Thornton Internationa.,*322 B.R. 44

(S.D.N.Y. 2005). In applying the six-part analysis, the *Bondi* court found that timely adjudication could not be found where it was shown the usual length of the state court proceeding suggested the matter in question would move slowly through the courts. The court in *Bondi* also noted that where a matter was collected to be part of a much larger bankruptcy case, it would be impractical to sever it from the bankruptcy proceedings to allow for timely adjudication. *Id.* at 50. As the court in *Bondi* noted that the idea that a matter can promptly be resolved in state court has little application when dealing with a state court matter that is intertwined with a complex bankruptcy and other, related complex litigation. *Id.*

43.    Here, the plaintiffs' claims seek a determination of their right to certain of the Debtor's assets making such claims inextricably intertwined with this complex Bankruptcy Case concerning some $96 million in assets and hundreds of creditors (plan participants, including plaintiffs). There are likewise the intertwined Interpleaders and the Other Litigation. The Bankruptcy Court (or the Interpleader court) is the one forum that can consolidate and most efficiently resolve all such complex litigation. Allowing adjudication of the plaintiffs' claims against Aviva separate and apart from Aviva's claims against the Debtor would likely have an unfavorable effect on the administration of the Bankruptcy Case. Further, in the unlikely event that the plaintiffs obtained a judgment against Aviva, Aviva would necessarily have to pursue its indemnity and contribution claims against the Debtor in this Court The Bankruptcy Court is thus the proper court to adjudicate the Debtor's, Aviva's and plaintiffs' claims, which should be consolidated, and which can be timely adjudicated. In this regard, it is also inaccurate to suggest that the Lawsuit could promptly be resolved by sending in back to state court. As every litigant before this Court has noted, the Lawsuit is a mass action involving some 65 plaintiffs and 29

defendants.  Much fact discovery remains, the issues of severance and dispositive motions are yet to be determined and the previously set trial date, of course, has been vacated.

44.    Additionally, to the extent it is determined that the life insurance policies at issue in the Lawsuit are property of the Debtor's estate, exclusive jurisdiction over that property resides in the federal district court where the Debtor's Bankruptcy Case is pending pursuant to 28 U.S.C. §1334(e)(1).  Consequently, the state court will not have jurisdiction over the policies and will thus be unable to adjudicate claims concerning such property.

45.    For the noted reasons, plaintiffs have not and cannot establish mandatory abstention under 28 U.S.C. §1334(c)(2).

## VII.
## DISCRETIONARY ABSTENTION AND EQUITABLE REMAND
## ARE NOT APPROPRIATE UNDER THE CIRCUMSTANCES

46.    Finally, the plaintiffs request remand in the Motions on the basis of discretionary abstention and/or equitable remand.    The Motions should be denied however because consideration of the relevant factors dictate that discretionary abstention under 28 U.S.C. § 1334(c)(1)[6] and/or equitable remand under 28 U.S.C. § 1452(b)[7] are not appropriate under the circumstances in this case.

The doctrine of abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it . . . ." *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976), *rehearing denied* 426 U.S. 912. Therefore, "[a]bstention rarely should be invoked." *Ankenbrandt v. Richards*, 504 U.S. 689, 705

---

[6]Section 1334(c)(1) of Title 28, governing permissive abstention, states, in relevant part, that "[n]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."
[7]Section 1452 of Title 28, governing equitable remand, states, in relevant part, that "[t]he court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground."

(1992). Abstention is also atypical or, according to some courts, not advised, if a matter is a core proceeding. *In re Lawrence United Corp.*, 221 B.R. 661, 668 (Bankr. N.D.N.Y. 1998). A court must also consider which of the two actions will best serve the needs of the parties by providing a comprehensive solution to the controversy. *Koch Engineering Co., Inc. v. Monsanto Co.*, 621 F.Supp. 1204, 1208 (D.C. Mo. 1985).46. Because the statutes are similar in purpose, courts generally examine the same list of nonexclusive factors when determining issues of discretionary abstent*ion under 28 U.S.C. § 1334(c)(1)* or equitable r*emand under 28 U.*S.C. § 1452(b). *Regal Row Fina, Inc. v. Washington Mutual Bank*, 2004 WL 2826817 at *8 (N.D. Tex., Dec. 9, 2004); *In re Coho Energy, Inc., 309 B.R. 217, 2*21 Bankr. N.D.Tex. 2004). The list of 14 factors is set forth in *In re Heritage Southwest Medical Group, P.A.*, 423 B.R. 809, 815 (Bankr. N.*D. Tex. 2010)* and the following analysis of those factors demonstrates quite plainly that discretionary abstention and/or equitable remand are not appropriate here:

(1)   **The effect or lack thereof on the efficient administration of the estate if the court decides to remand or abstain**. The "starting point" in analyzing whether permissive abstention is appropriate is whether abstention "will impede or disrupt the bankruptcy court's exclusive and non-delegable control over the administration of the estate within its possession." *In re Coho Energy, Inc.,* 309 B.R. 217, 221 (Bankr. N.D.Tex. 2004). In the event that the plaintiffs' claims are adjudicated in state court and a judgment against Aviva is obtained (Aviva, of course, strongly disputes the likelihood of such a judgment), Aviva would then have the right to assert its contribution claim against the Debtor in this Court after the conclusion of a state court proceeding. Such a scenario would lead to duplicative proceedings and waste judicial resources and the resources of the parties. Conversely, adjudication of the Lawsuit in the Bankruptcy Court (consolidated with the other pending litigation) would allow for all these claims and issues which concern the fundamental question as to who has the legal right to possess and control the assets of the estate to be efficiently decided in one time and in one proceeding.

(2)   **Extent to which state law issues predominate over bankruptcy issues**. To date, the plaintiffs have only stated claims based on state law.

(3)   **Difficult or unsettled nature of applicable law. The plaintiffs' cla**ims represent state law claims that federal bankruptcy court judges routinely hear. It is notable in this regard, however, that of the eight plaintiff groups (20 total plaintiffs)

relating to policies of insurance issued by Aviva and who make claims against Aviva (and the Debtor and all other defendants), only one group is from Texas. The remainder are from Colorado, Oklahoma, Tennessee and Kentucky. This geographic dispersion of plaintiffs is similar in regard to remaining plaintiffs as, altogether, there are plaintiffs from 13 states. Thus, any suggestion by plaintiffs that a Texas state court is uniquely skilled to determine all such claims arise under various state laws would simply not be true.

(4)    **Presence of related proceedings commenced in state court or other non-bankruptcy proceeding**.  To Aviva's knowledge, there are at least 6 proceedings commenced in other state courts that  related to the Bankruptcy Case.  As noted above, the Debtor has removed and sought transfer of those cases to the Bankruptcy Court.

(5)    **Jurisdictional basis, if any, other than § 1334**.  While no other jurisdictional basis exists regarding the Lawsuit, Federal jurisdiction as to the Interpleaders exists pursuant to 28 U.S.C. § 1335 and the Interpleaders directly impact the plaintiffs' ability to proceed pending the determination of the property of the estate issues.

(6)    **Degree of relatedness or remoteness of proceedings to main bankruptcy case**.  The Lawsuit is directly related and not at all remote to the Bankruptcy Case.  The plaintiffs assert allegations and claims that directly affect the assets of the Debtor and, correspondingly, the rights of the creditors.  The claims against the Debtor seek the possession and control of certain of the life insurance policies which comprise the sole assets of the Debtor.  The claims against co-defendant Aviva, and the other co-defendants concern both claims of conspiracy with the Debtor and also claims that it was the fraudulent acts of Aviva and other co-defendants which induced plaintiffs to be participants in such plan and that as a result of that alleged fraud, they are entitled to possess and control the "monies" (i.e. the policies issued by Aviva and related policy values) held by the Debtor.

(7)    **The substance rather than the form of an asserted core proceeding**.  As noted throughout this brief, the claims asserted by the plaintiffs against Aviva and the other co-defendants are intertwined with their claims against the Debtor, the Debtor's counterclaims against the plaintiffs, and Aviva and certain other co-defendants' cross-claims against the Debtor.  And all such claims concern the assets of the Debtor's estate.

(8)    **The feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court**.  As indicated above, the resolution of Aviva's contribution claims against the Debtor and vice versa and severance of any matters would lead to duplicative proceedings and waste judicial resources (and the resources of the parties).

(9)     **The burden of the court's docket**.  The Bankruptcy Court can consolidate the matters with no additional material burden on the Court's docket.

(10)    **The likelihood that the commencement of the proceeding involves forum shopping by one of the parties**.  The Debtor initially filed the Bankruptcy Case in direct response to the multitude of lawsuits filed by plaintiffs and the complications created by competing claims to the policies from which the Debtor funds its operations and plan benefits.  The Debtor chose this forum, presumably based on the residency of its trustee.  Thus, the forum of the Bankruptcy Case and is a natural result of the Debtor's bankruptcy and not any effort to forum shop.

(11)    **The existence of a right to a jury trial**.  To the extent the plaintiffs are able to show they have individual claims against Aviva separate and apart from their claims against the Debtor, the Bankruptcy Court can recommend that the district court withdraw the reference to conduct a jury trial in this matter, but permit the Bankruptcy Court to preside over all pretrial matters which this court can very promptly address.  *See In re Brook Mays*, 363 B.R. at 818.  Further, such a withdrawal of the reference or lifting of the automatic stay could be done to allow the Interpleaders to proceed as the exact determination as to who properly should possess and control the policies at issue (and corresponding finding that eliminates the exposure of Aviva to a dual liability) is presented in the Interpleaders.

(12)    **The presence in the proceeding of non-debtor parties**.  Aviva and the plaintiffs are non-debtor parties.  However, as demonstrated herein, they will all have to participate extensively in the Debtor's Bankruptcy Case and would not be inconvenienced by the Bankruptcy Court or the district court forum.[8]

(13)    **Comity.**  The plaintiffs' bald assertion that the Texas law governing the plaintiffs' claims is "an area that is well settled" is without merit.  The Texas court cannot decide what is property of the estate as this issue is a matter of the exclusive jurisdiction of the Bankruptcy Court.

(14)    **The possibility of prejudice to other parties in the action**.  Aviva will be significantly prejudiced if it has to defend the same or substantially similar claims and allegations in two proceedings.  Further, the resolution of Aviva's contribution claims against the Debtor would also lead to duplicative proceedings and unnecessary expenditures of Aviva's resources.  There is no evidence of prejudice to the plaintiffs of having their claims heard in a federal forum.

---

[8]Notably, Mr. Malesovas is his clients' representative on the counsel of the Committee of Unsecured Creditors in the Debtor's Bankruptcy Case.

47.    As illustrated by the above analysis, and also taking into account each of the factors as a whole, it is clear that discretionary abstention and/or equitable remand are not supported or warranted in this case.  For those reasons, the Motions should be denied.

## VIII.
## CONCLUSION

48.    For the foregoing reasons, Aviva respectfully requests the Court to deny the Motions and grant it such other relief as may be appropriate under the circumstances.

Date:   July 15, 2010.                   Respectfully Submitted,

                                         KANE RUSSELL COLEMAN & LOGAN PC

                                         By: /s/ Joseph A. Friedman
                                             Joseph A. Friedman
                                             Texas State Bar No. 07468280
                                             3700 Thanksgiving Tower
                                             1601 Elm Street
                                             Dallas, Texas 75201
                                             Telephone - (214) 777-4200
                                             Facsimile - (214) 777-4299
                                             Email: ecf@krcl.com

                                         and

                                         WALTERS BENDER STROHBEHN & VAUGHAN PC
                                         J. Michael Vaughan (admitted *pro hac vice*)
                                         David M. Skeens (admitted *pro hac vice*)
                                         R. Keith Johnston (admitted *pro hac vice*)
                                         11100 Main Street, Suite 2500 City Aviva Square
                                         Kansas City, Missouri 64105
                                         Telephone: (816) 421-6620
                                         Facsimile:  (816) 421-4747

                                         **Counsel for Aviva Life and Annuity Company**

## CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the foregoing was duly served via this Court's electronic case notification system on July 15, 2010, and via United States Mail, first-class postage prepaid or via e-mail at the e-mail address shown below upon the parties listed below on this 15th day of July 2010.

| | |
|---|---|
| Mr. Dalton D. Harris, III<br>The Harris Law Firm, PC<br>5050 West Lovers Lane<br>Dallas, TX 75209<br>Telephone:  (214) 956-7474<br>Fax:  (214) 956-7405<br>dalton@lawstop.com | Mr. John Malesovas<br>Malesovas Law Firm<br>816 Congress, Suite1265<br>Austin, TX 78701<br>Telephone: (512) 708-1777<br>Fax: (512) 708-1779<br>john@malesovas.com |
| Mr. Anthony L. Vitullo<br>Fee, Smith, Sharp & Vitullo, L.L.P.<br>Three Galleria Tower<br>13155 Noel Road, Suite 1000<br>Dallas, TX 75240<br>Telephone: (972) 934-9100<br>Fax: (972) 934-9200<br>lvitullo@feesmith.com | Mr. Gregg S. Weinberg<br>Roberts Markel PC<br>2800 Post Oak Boulevard, 57th Floor<br>Houston, TX 77056<br>Telephone: (713) 840-1666<br>Fax: (713) 840-9404<br>gweinberg@robertsmarkel.com |
| Ms. Katy S. Kamen<br>Mr. Ted Scallet<br>Groom Law Group<br>1701 Pennsylvania Ave., N.W.<br>Washington, DC 20006<br>Telephone: (202) 857-0620<br>Fax: (202) 659-4503<br>kkamen@groom.com<br>eas@groom.com | Ms. Kathleen Barrow<br>Jackson Lewis, LLP<br>1415 Louisiana Street, Suite 3325<br>Houston, TX 77002<br>Telephone: (713) 568-7847<br>Fax: (713) 650-0405<br>barrowk@jacksonlewis.com |
| Mr. Andrew A. Bergman<br>Mr. Jay Gray<br>Andrew A. Bergman, PC<br>4514 Travis Street, Suite 300<br>Dallas, TX 75205<br>Telephone:  (214) 528-2444<br>Fax:  (214) 599-0602<br>bergman@abergmanlaw.com<br>jkurtisgray@yahoo.com | Ms. Amy B. Boyea<br>Edison, McDowell & Hetherington, LLP<br>2000 E. Lamar Boulevard, Suite 600<br>Arlington, TX 76006<br>Telephone: (817) 303-2140<br>Fax: (713) 337-8849<br>amy.boyea@emhllp.com |
| Mr. D. Craig Brinker<br>Henslee Schwartz, LLP<br>6688 North Central Expressway, Suite 850<br>Dallas, TX 75206<br>Telephone: (214) 219-8833<br>Fax: (214) 219-8866<br>cbrinker@hensleeschwartz.com | Ms. Melinda R. Burke<br>Shannon Gracey Ratliff & Miller, LLP<br>777 Main Street, Suite 3800<br>Fort Worth, TX 76102<br>Telephone: (817) 877-8158<br>Fax: (817) 336-3735<br>mburke@shannongracey.com |

| | |
|---|---|
| Mr. Lee L. Cameron<br>Wilson Elser Moskowitz Edelman & Dicker, LLP<br>901 Main Street, Suite 4800<br>Dallas, TX 75202<br>Telephone: (214) 698-8000<br>Fax: (214) 698-1101<br>lee.cameron@wilsonelser.com | Ms. Karan C. Ciotti<br>Ogden, Gibson, Broocks, Longoria & Hall, LLP<br>1900 South Pennzoil Tower<br>711 Louisiana St.<br>Houston, TX 77002<br>Telephone: (713) 844-3040<br>Fax: (713) 844-3030<br>kciotti@ogblh.com |
| Mr. Tres Cleveland<br>Maynard Cooper & Gale, PC<br>1901 Sixth Avenue North, Suite 2400<br>Birmingham, AL 35203<br>Telephone: (205) 254-1000<br>Fax: (205) 254-1999<br>tcleveland@maynardcooper.com | Mr. David P. Donahue<br>Maynard Cooper & Gale, PC<br>1901 Sixth Avenue North<br>2400 AmSouth/Harbert Plaza<br>Birmingham, AL 35203<br>Telephone: (205) 254-1000<br>Fax: (205) 254-1999<br>ddonahue@maynardcooper.com |
| Mr. Juston R. Givens<br>Phillips Murrah, P.C.<br>101 N. Robinson Avenue, 13th Floor<br>Oklahoma City, OK 73102<br>Telephone: (405) 235-4100<br>Fax: (405) 235-4133<br>jrgivens@phillipsmurrah.com | Ms. Stacy E. Hoffman<br>Cobb Martinez Woodward, PLLC<br>1700 Pacific Ave., Suite 4545<br>Dallas, TX 75201<br>Telephone: (214) 220-5203<br>Fax: (214) 220-5253<br>shoffman@cobbmartinez.com |
| Mr. Stephen C. Jackson<br>Maynard Cooper & Gale, PC<br>1901 Sixth Avenue North, Suite 2400<br>Birmingham, AL 35203<br>Telephone: (205) 254-1000<br>Fax: (205) 254-1999<br>sjackson@maynardcooper.com | Mr. Dale Ossip Johnson<br>The Johnson Firm<br>P. O. Box 427<br>Cedar Park, TX 78630<br>ossip@ossipian.com |
| Mr. J. Justin Johnston<br>Wyrsch Hobbs & Mirakian, PC<br>1000 Walnut, Suite 1600<br>Kansas City, MO 64106<br>Telephone: (816) 221-0080<br>Fax: (816) 221-3280<br>jjohnston@whmlaw.net | Mr. Gary S. Kessler<br>Kessler & Collins<br>2100 Ross Avenue, Suite 750<br>Dallas, TX 75201<br>Telephone: (214) 379-0722<br>Fax: (214) 373-4714<br>gsk@kesslercollins.com |

870812 v1 (71655.00002.000)

| | |
|---|---|
| Mr. Roshanak Khosravighasemabadi<br>Thompson, Coe, Cousins & Irons, LLP<br>700 North Pearl Street, 25th Floor<br>Dallas, TX 75201<br>Telephone:  (214) 871-8200<br>Fax:  (214) 871-8209<br>RKhosravi@thompsoncoe.com | Mr. Fred A. Leibrock<br>Phillips Murrah, P.C.<br>Corporate Tower, 13th Floor<br>101 N. Robinson<br>Oklahoma City, OK 73102<br>Telephone: (405) 235-4100<br>Fax: (405) 235-4133<br>faleibrock@phillipsmurrah.com |
| Ms. Allison J. Maynard<br>Wilson Elser Moskowitz Edelman & Dicker,<br>LLP<br>901 Main Street, Suite 4800<br>Dallas, TX 75202<br>Telephone: (214) 698-8000<br>Fax: (214) 698-1101<br>allison.maynard@wilsonelser.com | Ms. Alison H. Moore<br>Thompson Coe Cousins & Irons, LLP<br>700 N. Pearl Street, 25th Floor<br>Dallas, TX 75201<br>Telephone:  (214) 871-8200<br>Fax:  (214) 871-8209<br>amoore@thompsoncoe.com |
| Mr. Timothy Muth<br>Reinhart Boerner Van Deuren SC<br>1000 N. Water Street, Suite 2100<br>Milwaukee, WI 53201<br>Telephone: (414) 298-1000<br>Fax: (414) 298-8097<br>tmuth@reinhartlaw.com | Ms. Latoyia Pierce<br>Henslee Schwartz, LLP<br>6688 N. Central Expressway, Suite 850<br>Dallas, TX 75206<br>Telephone: (214) 219-8833<br>Fax: (214) 219-8866<br>lpierce@hensleeschwartz.com |
| Mr. Matthew G. Pletcher<br>Beirne Maynard & Parsons, L.L.P.<br>1300 Post Oak Blvd., Suite 2500<br>Houston, TX 77056<br>Telephone: (713) 623-0887<br>Fax: (713) 960-1527<br>mpletcher@bmpllp.com | Mr. Joe Sibley<br>Camara & Sibley, LLP<br>2339 University Blvd.<br>Houston, TX 77005<br>Telephone:  (713) 893-7973<br>Fax:  (713) 583-1131<br>sibley@camarasibley.com |
| Mr. Nelson Skyler<br>Brown Sims, PC<br>1177 West Loop South, Tenth Floor<br>Houston, TX 77027<br>Telephone:  (713) 629-1580<br>Fax:  (713) 629-5027<br>nskyler@brownsims.com | Mr. L. Boyd Smith<br>Sedgwick, Detert, Moran & Arnold LLP<br>1111 Bagby Street, Suite 2300<br>Houston, TX 77002<br>Telephone: (832) 426-7000<br>Fax: (832) 426-7009<br>boyd.smith@sdma.com |
| Mr. Jeffrey M. Tillotson<br>Lynn Tillotson Pinker & Cox, LLP<br>2100 Ross Avenue, Suite 2700<br>Dallas, TX 75201<br>Telephone: (214) 981-3800<br>Fax: (214) 981-3839<br>jmt@lynnllp.com | Mr. Michael Vaughan<br>Walters Bender Strohbehn & Vaughan, PC<br>P. O. Box 26188<br>Kansas City, MO 64196<br>Telephone: (816) 421-6620<br>Fax:  (816) 421-4747<br>mvaughan@wbsvlaw.com |

| Mr. K. Mark Vincent<br>Vincent Lopez Serafino Jenevein, PC<br>2001 Bryan Street, Suit4e 2000<br>Dallas, TX 75201<br>Telephone: (214) 979-7415<br>Fax: (214) 979-7402<br>mvincent@vilolaw.com | Mr. David R. Woodward<br>Cobb Martinez Woodward, PLLC<br>1700 Pacific Avenue, Suite 4545<br>Dallas, TX 75201<br>Telephone: (214) 220-5203<br>Fax: (214) 220-5253<br>dwoodward@cobbmartinez.com |
|---|---|
| Mr. Jeff Work<br>Gordon & Rees LLP<br>1900 West Loop South, Suite 1000<br>Houston, TX 77027<br>Telephone: (713) 961-3366<br>Fax: (713) 961-3938<br>jwork@gordonrees.com | Mr. Steven R. Levy<br>17670 Woodland Avenue<br>Morgan Hill, CA 95037<br>Telephone: (408) 274-7000<br>Fax: (408) 274-9000<br>stevelevy@verizon.net |
| Jay K. Gray<br>Gray Law<br>4514 Travis Street, Suite 300<br>Dallas, Texas 75205 | |

*/s/Joseph A. Friedman*
Joseph A. Friedman